UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| JIM SEEDS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:17-CV-718-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| STERLING JEWELERS, INC., | ) | **ORDER COMPELLING** |
| | ) | **ARBITRATION** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

When Plaintiff Jim Seeds began working as a jeweler at a repair shop in Louisville, Kentucky operated by Defendant Sterling Jewelers, Inc. ("Sterling"), he signed many "onboarding" documents. One of these documents was an agreement to arbitrate any claims he had against Sterling that arose out of his employment there pursuant to the company's RESOLVE Program Alternative Dispute Resolution Arbitration Agreement. Seeds does not dispute that he signed this document. He argues, however, that this agreement cannot be enforced against him because it is both procedurally and substantively unconscionable. Because the Court finds that the Arbitration Agreement here was neither, the Court grants the defendant's Renewed Motion to Stay Proceedings and Compel Arbitration, but denies defendant's Renewed Motion to Dismiss without prejudice. [R. 11] The plaintiff shall pursue his claims in arbitration in a manner consistent with the terms of the parties' agreement.

I.   **Background**

Defendant Sterling is an American specialty jewelry company which operates retail jewelry stores throughout the country under various brands including Jared the Galleria of Jewelry. [R. 11-2, at p. 2; Aff. J. Broadhead, at ¶ 2.] Seeds was employed as a jeweler at the

repair shop in the Jared the Galleria of Jewelry in Louisville, Kentucky, from April 2014 through March 2016. *Id.* at ¶ 6; [R. 1, at ¶¶ 11; 20]

Sterling requires its employees to resolve any "pre-employment, employment, or postemployment dispute, claim, or controversy" through its "RESOLVE" Program. The RESOLVE Program is a multi-step alternative dispute resolution program for Sterling employees, with the final step being binding arbitration for all employees. [R. 11-1, at p. 3] After being introduced to the RESOLVE Program, employees are also asked to sign an Arbitration Agreement (the "RESOLVE Agreement" or "Arbitration Agreement"). [R. 11-1, pp. 2-3; 11-2, at ¶ 5; Ex. B.] This RESOLVE Agreement again outlines the steps in the RESOLVE Program before asking employees to sign. *Id.* When Seeds began his employment, he digitally acknowledged receipt of and agreed to the RESOLVE Program as part of his hiring process. *Id.* In relevant part, Seeds agreed:

> to utilize the Sterling RESOLVE Program to pursue any pre-employment, employment or postemployment dispute, claim, or controversy (collectively called "claim") against Sterling Jewelers Inc., . . . regarding any alleged unlawful act regarding [Seeds'] application for employment, employment or the termination of [Seeds'] employment which could have otherwise been brought before an appropriate court including, but not limited to, claims under . . . the Age Discrimination in Employment Act, . . . [or] any state anti-discrimination statutes [.]

*Id.*; *see also* [R. 11-2, at ¶ 5; Ex. B] Seeds agreed to these terms the day he was hired. [R. 11-1, at pp. 3-4, R. 11-2, at p. 18]

Despite signing the Arbitration Agreement and acknowledging its terms (including the multi-step alternative dispute resolution process), Seeds failed to pursue his claims through RESOLVE. [R. 11-1, at p. 4, R. 11-3, at ¶ 4] Instead, Seeds filed his Complaint in this Court on November 28, 2017. [R. 1] In his Complaint, Seeds alleges he was subjected to age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

§§ 621. *et. seq.*, and the Kentucky Civil Rights Act ("KCRA"), KRS § 344.040. *Id.* at ¶¶ 21-23; 26-27. Seeds' main allegations against Sterling arose when Seeds sought a managerial position within the company. According to Seeds, the company responded instead with a series of overly-harsh disciplinary actions that ultimately led to his termination. *Id.* at ¶¶ 10-20. According to his Complaint, younger employees were not subjected to the same disciplinary action for committing the same infractions. *Id.*

Shortly after the Complaint was filed, Sterling moved to dismiss the action for failure to state a claim, or in the alternative, to stay proceedings and compel arbitration. [R. 4] A few weeks after this motion was filed, Seeds' counsel filed a Motion to Withdraw. [R. 5] The Court granted the Motion to Withdraw and denied Sterling's Motion to Dismiss without prejudice, allowing Seeds sixty (60) days to retain new counsel. [R. 7] Seeds did not hire new counsel, deciding instead to proceed in this matter *pro se*. Sterling re-filed its Motion to Dismiss or Compel Arbitration on April 27, 2018. [R. 11] Seeds filed a timely response.[1] [R. 12] In his response, Seeds admits to signing the Arbitration Agreement at issue, but argues that it should not be enforced because it is both substantially and procedurally unconscionable. *Id.* at pp. 1-3.

## II. Analysis

### A. Arbitration Standard

In this Circuit, "[i]n order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate," a showing that mirrors the summary judgment standard. *Great Earth Cos. v. Simons,* 288 F.3d 878, 889 (6th Cir. 2002). Therefore, district courts in Kentucky

---

[1] Seeds responded to Sterling's Motion to Dismiss with a filing styled "Plaintiff's Motion to Dismiss Defendant's Renewed Motion to Dismiss, or in the Alternative, Stay Proceedings and Compel to Arbitrate and Thereby Proceed to Trial." [R. 12] The Court will construe this filing as a response to the defendant's motion to dismiss.

evaluate a motion to compel arbitration as one for summary judgment under Fed. R. Civ. P. 56(c). *See Freeman v. Easy Mobile Labs, Inc.*, No. 1:16-CV-00018-GNS, 2016 WL 4479545, at *1 (W.D. Ky. Aug. 24, 2016) (citing *Arnold v. Rent-a-Center, Inc.*, No. 11-18-JBC, 2011 WL 1810145, at *2 (E.D. Ky. May 12, 2011) ("This court will treat the motion to compel arbitration as one for summary judgment ....")); *Weddle Enters., Inc. v. Treviicos-Soletanche, J.V.*, No. 1:14CV-00061-JHM, 2014 WL 5242904, at *2 (W.D. Ky. Oct. 15, 2014) ("A motion to dismiss based on the existence of a valid arbitration agreement is not evaluated under the usual Fed. R. Civ. P. 12(b)(6) standard. Instead, courts apply the standard applicable to motions for summary judgment.") (internal citation omitted) (citation omitted). "In order to show that the validity of the agreement is in issue, the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos.*, 288 F.3d at 889. (internal quotation marks omitted) (citation omitted).

### B. FAA Overview

The Federal Arbitration Act ("FAA") was enacted "to ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). The statute "embodies [a] national policy favoring arbitration . . ." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th. Cir. 2016) (citing *Seawright v. Am. Gen. Fin. Servs., Inc.,* 507 F.3d 967, 972 (6th Cir. 2007)). The FAA applies to written agreements to arbitrate disputes that arise out of contracts involving transactions in interstate commerce.[2]

---

[2] The Federal Arbitration Act ("FAA") applies only to "[a] written provision in any maritime transaction or *a contract evidencing a transaction involving commerce.* " 9 U.S.C. § 2 (emphasis added). In *Allied Bruce–Terminix Companies, Inc. v. Dobson,* the United States Supreme Court had occasion to interpret the phrase "evidencing a transaction involving commerce." 513 U.S. 265 (1995). First, the Court concluded that the word "involving" was the "functional equivalent of 'affecting.' " *Id.* at 273–74. Next, the Court adopted a "transaction in fact" interpretation of the phrase "evidencing a transaction." *Id.* at 277-78. The Court 'read[ ] the Act's language as insisting that the 'transaction' in fact 'involv[e]' interstate commerce, even if the parties did not contemplate an interstate commerce connection." *Id.* at 281.

Under its terms, such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that a district court *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Byrd*, 470 U.S. at 218 (emphasis in original).

When a party invokes the FAA and asks a federal court to dismiss or stay a case and compel arbitration, the Court must determine whether the parties agreed to arbitrate the dispute at issue. *Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir. 2000). This requires an examination of the contract language in light of the strong federal policy favoring arbitration, resolving any ambiguities in the contract or doubts as to the parties' intentions in favor of arbitration. *Id.* Courts should engage in the following four-step inquiry: (1) determine whether the parties agreed to arbitrate; (2) determine the scope of that agreement; (3) if federal statutory claims are asserted, the Court must consider whether Congress intended those claims to be non-arbitrable; and (4), if the Court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. *Id.*

### C. Motion to Compel Arbitration

#### i. Agreement to Arbitrate

Arbitration agreements are fundamentally contracts. As such, courts must "review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright*, 507 F .3d at 972; *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009) ("[S]tate law," therefore, is applicable to determine which contracts are binding under § 2 and enforceable under § 3 "if that law arose to govern issues concerning the

validity, revocability, and enforceability of contracts generally.") (quoting *Perry v. Thomas*, 482 U.S. 483, 493, n. 9 (1987)).

The Arbitration Agreement in this case states that Sterling's employees agree to pursue "employment or postemployment dispute, claim, or controversy . . . against [Sterling] . . . including, but not limited to, claims under . . . the Age Discrimination in Employment Act, . . . [or] any state anti-discrimination statutes [.]" [R. 11-1, at p. 3]; *see also* [R. 11-2, at ¶ 5; Ex. B] By its clear terms, the agreement is an arbitration agreement, and Seeds signed it. [R. 11-2, Ex. C, at p. 18] This language reflects that the parties did in fact "agree to arbitrate." *Stout*, 228 F.3d at 715.

Still, Seeds argues that the Arbitration Agreement is unenforceable. Seeds attacks the Arbitration Agreement on both procedural and substantive grounds. In his response, Seeds admits that he "digitally signed" the Arbitration Agreement at issue. [R. 12-1, at p.1] However, he argues it should not be enforced against him because the defendant engaged in procedural unconscionability when it presented him with this document as one of a series in the "onboarding process" and failed to provide "admonitions from the hiring manager . . . to carefully review over, seek out legal counsel prior to signing, or opt out of altogether without consequence." *Id*. In other words, Seeds asks this Court to find the agreement he signed unenforceable because he did not read the document carefully before signing. This is not a legally tenable position. The Supreme Court of Kentucky has held that:

> [p]rocedural, or "unfair surprise," unconscionability "pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language . . . . [It] involves, for example, 'material, risk-shifting' contractual terms which are not typically expected by the party who is being asked to 'assent' to them and often appear [ ] in the boilerplate of a printed form."

*Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 576 (Ky. 2012) (quoting *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 343 n. 22 (Ky. App. 2001) (internal citations omitted)). Factors relevant to the procedural unconscionability inquiry include the bargaining power of the parties, "the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." *Id.* (citing *Jenkins v. First American Cash Advance of Georgia, LLC*, 400 F.3d 868, 875–876 (11th Cir. 2005)).

Seeds cannot argue that the Arbitration Agreement at issue was any of those things. A comprehensive, yet user-friendly explanation of the RESOLVE Program (the "RESOLVE Guide") was included in his employment documents during the "onboarding process." *See* [R. 11-2, at ¶ 4; *Id.* at Ex. A] This RESOLVE Guide preceded the Arbitration Agreement. Before being asked to sign the Arbitration Agreement, the RESOLVE Guide laid out, in a straight-forward manner, the process an employee must undertake when submitting a complaint of employment discrimination. *See* [R. 11-2, Aff. of J. Broadhead, Ex. C, at pp. 8 – 15] The process was explained in simple, conventional sentences and phrases that non-legal personnel could easily comprehend. This Guide also laid out each step in detail so that employees would know how to initiate a claim, the requirements for each step, and the relative time-tables for each step of the process. The RESOLVE Guide even provided bullet point summaries of pertinent information following each step of the RESOLVE process. *See id.* at pp. 5 - 6. Included in these bullet point summaries are the topics "What is Covered Under the Resolve Program" and "What is Not Covered" [under the RESOLVE Program]. *Id.* at pp.9 – 10. The RESOLVE main line was listed on several pages in large, boldface type, placed conspicuously apart from the main

information.³ *See id.* at pp. 4, 9, 15. Following the description of the Arbitration Step, the Guide included a "Questions and Answers" section that provided information to employees about how much the process would cost, how decisions were made (and by whom), and whether the employee ought to bring an attorney at various stages of the process. *Id.* at 11 – 12.

After the RESOLVE Guide was provided to the employee, the employee was asked to sign the Arbitration Agreement that followed it. In pertinent part, just before asking for Seeds' electronic signature, there appeared an "Acknowledgement of Receipt" section that is in bold print. This section reads "The documents were distributed electronically and you have acknowledged, by clicking the 'Acknowledgement' checkbox, that you are responsible for *reading* and *understanding all of the documents*." *Id.* at p. 18 (emphasis added). Seeds' electronic signature appears below this Acknowledgement Section.

Still, Seeds maintains this process for obtaining his signature on the Arbitration Agreement was obtained in a procedurally unconscionable manner. The Court does not agree. When determining whether the arbitration clause itself was validly obtained, "[s]tate contract law . . . governs. . ." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003). And "[i]t is the settled law in Kentucky that one who signs a contract is presumed to know its contents, and that if he has an opportunity to read the contract which he signs he is bound by its provisions, unless he is misled as to the nature of the writing which he signs or his signature has been obtained by fraud." *Hathaway v. Eckerle*, 336 S.W.3d 83, 89–90 (Ky. 2011) (quoting *Clark v. Brewer*, 329 S.W.2d 384, 387 (Ky. 1959)). Seeds cannot allege that the procedure Sterling used for onboarding was misleading or fraudulent. The company provided a detailed, yet straight-

---

³ Seeds argues that the Human Resources number was not conspicuously placed in the Guide. He alleges that one could only discover this number "by some miracle. . ." [R. 12-1, at p. 3] This is patently false. The RESOLVE hotline number is conspicuously placed in the Guide in three (3) separate locations, in large, boldfaced type.

forward explanation of the RESOLVE Alternative Dispute Program that all employees must agree to. Further, it provided a caution just before the signature line in bold print for the employee to read and understand all content carefully before signing. Seeds admits to signing this document. [R. 12-1, at p. 1] He does not allege he did not understand it, or that his signature was procured by fraud. He argues instead that someone should have told him the legal significance of the Arbitration Agreement before he signed. That is not required under Kentucky law. The Arbitration Agreement was not procedurally unconscionable.

Seeds next argues that the Arbitration Agreement is substantively unconscionable. [R. 12-1, at pp. 2-3] In this part of his response, Seeds mainly re-packages the same allegations made in his procedural unconscionability argument. It appears his chief grievance is that it was difficult to remember the process for initiating a claim through the company's RESOLVE Program. *Id.* He further argues that the number for reporting harassment was "inconspicuous."[4] *Id.* At one point, he admits that this information was available in his Employee Handbook, but when he attempted to make a claim pursuant to the RESOLVE procedures, he did not have the Employee Handbook "readily on hand." *Id.* He does not allege that he was never given a copy, however. Throughout his Response, Seeds argues it was the defendant's sole responsibility to both initiate and move his claim forward through the arbitration process. *See id.* at pp. 3-4. Plaintiff cites no authority for his arguments.

In Kentucky, "[a]n unconscionable contract has been characterized as 'one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other.' Unconscionability determinations being inherently fact-sensitive, courts must address such claims on a case-by-case basis." *Energy Home, Div. of S.*

---

[4] As discussed in the previous section, this argument is patently untenable.

*Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 836 (Ky. 2013) (quoting *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 342 (Ky. App. 2001) (citations omitted)). Seeds' arguments for substantive unconscionability fail. The Arbitration Agreement includes standard terms and conditions. In the second paragraph, it even references the RESOLVE Program as consideration to the employee in lieu of civil litigation. *See* [R. 11-2, Aff. of J. Broadhead, Ex. C, at p. 8] Moreover, the Court examines arbitration language in a contract "in light of a strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007) (citing *Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006); *Great Earth Cos. v. Simons*, 288 F.3d 878 (6th Cir. 2002). Upon reviewing the Arbitration Agreement at issue, the Court finds nothing about it is substantively unconscionable. Because the arbitration agreement was not unconscionable, both parties "agreed to arbitrate," and there is no "genuine issue" regarding the validity of the arbitration agreement. Fed. R. Civ. P. 56; *Stout*, 228 F.3d at 714; *Great Earth Cos.*, 288 F.3d at 889.

### ii. Scope of Arbitration Agreement

In analyzing the scope of the Arbitration Agreement, the Court acknowledges the well-established rule that "doubts regarding arbitrability must be resolved in favor of arbitration." *Fazio*, 340 F.3d at 386 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), *superseded by statute on other grounds*). The claims at issue here fit squarely within the Arbitration Agreement. Seeds' claims against Sterling include claims for state and federal age discrimination. [R. 1, at ¶¶ 21-23; 26-27] The Arbitration Agreement requires Seeds "to utilize the Sterling RESOLVE Program to pursue any . . . post-employment dispute, claim, or controversy . . . against Sterling . . . including, but not limited to . . . claims under the Age

Discrimination in Employment Act . . . [and] any anti-discrimination statutes . . ." [R. 11-2, Ex. B]  The scope of the agreement covers all the claims at issue.

### iii. Federal Statutory Claims Asserted

One of the plaintiff's claims invokes the ADEA. *See* [R. 1, at ¶¶ 21-23]  The Supreme Court has held that nothing in ADEA presents "any inherent inconsistency between [the policies intended to be promoted in ADEA] . . . and enforcing agreements to arbitrate age discrimination claims." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 27, (U.S. 1991); *see also Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 307 (6th Cir. 1991).  Therefore, the Court finds that Congress did not intend for claims arising under ADEA to be non-arbitrable.  Seeds' federal claims are subject to arbitration.

### iv. All Claims Subject to Arbitration

As explained above, all of Seeds' claims are arbitrable claims.  Hence there are no non-arbitrable claims for the Court to consider.

**IT IS HEREBY ORDERED** as follows:

1. Defendant Sterling Jewelers, Inc.'s Renewed Motion to Dismiss, or in the Alternative, Stay Proceedings [**R. 11**], is **denied in part without prejudice**, and **granted in part**.

2. Defendant Sterling Jewelers, Inc.'s **Renewed Motion to Stay Proceedings and Compel Arbitration [R. 11] is GRANTED**.

3. Defendant Sterling Jewelers, Inc.'s **Renewed Motion to Dismiss [R. 11]** is **DENIED without prejudice as moot.**

4. Plaintiff Jim Seeds **SHALL** prosecute his claims in accordance with the parties' Arbitration Agreement.

5. The matter is **STAYED** pending further proceedings to enforce any award of the arbitrator.

This the 9th day of November, 2018.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

Cc: Counsel of Record